IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDDIE MITCHELL,** | : | **CIVIL ACTION** |
| *Petitioner* | : | |
| v. | : | |
| | : | |
| **ROBERT GILMORE** *et al.*, | : | **No. 19-5507** |
| *Respondents* | : | |

## MEMORANDUM

PRATTER, J.                                                                                              AUGUST 23rd, 2023

Eddie Mitchell was convicted in state court of first-degree murder and related arms offenses. Mr. Mitchell asserts that his counsel provided him ineffective assistance during his trial. But Mr. Mitchell's claims were not fairly presented to the Pennsylvania courts, and in any event, they lack merit, so the procedural default cannot be excused. The Court thus adopts the magistrate judge's Report and Recommendation and denies Mr. Mitchell's petition.

## BACKGROUND

### I. The Conviction[1]

In Philadelphia, Pennsylvania, in response to a radio call, police arrived at the scene of a shooting near a corner store. When police arrived, they saw Maurice Hampton lying on the street, suffering from two gunshot wounds to his back. Mr. Hampton was pronounced dead shortly thereafter.

Later that evening, a detective recovered surveillance video from the corner store. The video showed the intersection where the shooting occurred and the shooter arriving at the scene about eight minutes before the murder. The shooter waited near the corner for a few minutes before Mr. Hampton exited the store. As Mr. Hampton began to walk north away from the store, the

---

[1] The Court states the factual history relevant only to Mr. Mitchell's objections to the Report and Recommendation. *See Commonwealth v. Mitchell*, No. 1743 EDA 2014, 2015 WL 7587199, at *1 (Pa. Super. Ct. Feb. 18, 2015).

1

shooter pulled out his gun, and shot at Mr. Hampton as he began to run. After Mr. Hampton collapsed on the street, the shooter ran in the opposite direction.

Jakyle Young had driven to the corner store shortly before the shooting. Five days after the shooting, Mr. Young gave a statement to the police indicating that while he was sitting in the car, he observed a man he knew as Abdul shooting at Mr. Hampton, and Mr. Young explained that he knew Abdul from his attendance at a Philadelphia mosque. Six months later, Mr. Young identified Mr. Mitchell as the shooter from a photo array. At trial, Mr. Young recanted his previous identification and testified that he had heard gunshots but did not witness the shooting. The Government impeached Mr. Young at trial with his previous statements and presented evidence that Mr. Mitchell had intimidated Mr. Young into recanting his previous statements. Mr. Young explained the inconsistency by alleging that he was under the influence of drugs at the time of the shooting and at the time he gave his statement to the police. Mr. Young also alleged that he was told to sign his police statement without being permitted to read it and that Mr. Mitchell's photograph was already circled when it was shown to him at the time of his second statement.

Latoya Ransome, Mr. Hampton's girlfriend, also gave a statement to the police, identifying the shooter from the video as a man nicknamed "Stacks."[2] In her statement, Ms. Ransome said she could see the shooter's face better with the video she viewed in the presence of the police. Ms. Ransome claimed that Stacks and Mr. Hampton had a feud because they were both dating another woman. Ms. Ransome later identified Mr. Mitchell from a photo array as the shooter from the video. At trial, Ms. Ransome recanted her previous statement and denied identifying Mr. Mitchell. The Government also impeached Ms. Ransome with her inconsistent statement. Ms. Ransome claimed that the police identified Mr. Mitchell on her behalf and threatened her with arrest if she

---

[2]  Another witness testified, when asked if Stacks was the name of the shooter she saw in the video, "That's what they call him on the street but Eddie Mitchell, I guess." May 29, 2014 Trial Tr. at 106:18–22.

2

did not agree to the statements. The detective who interviewed Ms. Ransome denied these accusations.

Nichole Bennett, Mr. Hampton's sister, had viewed the surveillance video of the shooting on the internet on her own computer. After viewing the video in the Homicide Division, Ms. Bennett also identified the shooter as "Stacks," a person with whom she had interacted three or four times in the two months before the shooting, and gave the detectives Stacks's phone number, which was later determined to be the same as Mr. Mitchell's phone number. Like Ms. Ransome, Ms. Bennett reported that Stacks and Mr. Hampton were in a dispute because they were dating the same woman. Ms. Bennett identified Mr. Mitchell from a photo array and identified Mr. Mitchell as the shooter on the video when she testified at trial.

Before closing arguments, the trial court instructed the jury that remarks made during closing argument were not to be considered as evidence. *See* June 2, 2014 Tr. at 64:11–14, 64:24–65:1, Doc. No. 21-2 at ECF 17–18 ("Now, even though these argument are not evidence, they are very important and I am asking you to pay careful attention to them. . . . It is your recollection of the evidence and your recollection alone which must guide your deliberations in this case."). During closing argument, the prosecutor attempted to vouch for the testimony of Mr. Ransome and Ms. Bennett. He attempted to explain Ms. Ransome's demeanor on the stand by claiming, inter alia, that "her bitterness and her anger are palpable but it's not bitterness and anger towards the police. It's bitterness and anger towards the deceased because when he went and got killed, she is thinking, you know, you went [and you] got yourself murdered and you left me with this kid." *Id.* at 94:25–95:6. The prosecutor also attempted to bolster the credibility of Ms. Bennett's identification of Mr. Mitchell by referring to his own personal experiences:

3

> And so when [Ms. Bennett] looks at the video, when she testifies in front of you, she says, well, I mean it is the same height, same build. He walks like the guy. I mean, I don't know. How do you describe a walk?
>
> It reminds me of a game that we used to play in the district attorney's office . . . . You could see the district attorneys coming back and so we would play a game called guess who is coming back from court. . . . So you see them coming back and you can't make out their faces. You can make out sex, race, approximate height, build, and their walk. And you know, I got ID'ed a bunch of times because if you were to ask my colleagues, well, how did you know it was [me]? They would say, well, white male, kind of schlumpy, overweight slightly, and I don't know, just the way he walks. Walks? Well, describe his walk. I don't know. Just walks.

*Id.* at 96:23–97:4, 97:9–12, 97:21–98:6. After closing arguments, the trial court again instructed the jury "to consider only the evidence which has been presented in court and the logical inferences which are derived from the evidence. You are not to rely upon supposition or guess on any matter which is not in evidence." *Id.* at 110:14–19.

The jury found Mr. Mitchell guilty of first-degree murder, carrying a firearm without a license, and carrying a firearm in public in Philadelphia. He was sentenced to a mandatory term of life in prison for murder, with concurrent sentences for his other offenses.

## II. Post-Conviction Relief

Mr. Mitchell filed a timely direct appeal, challenging his conviction as against the weight of the evidence. Finding that the record adequately supported the jury's verdict, the Superior Court affirmed the judgment of sentence. *Commonwealth v. Mitchell*, No. 1743 EDA 2014, 2015 WL 7587199, at *5 (Pa. Super. Ct. Feb. 18, 2015). The Pennsylvania Supreme Court denied his request for an appeal. *Commonwealth v. Mitchell*, 117 A.3d 296 (Table) (Pa. 2015).

Mr. Mitchell then filed a *pro se* challenge under the Pennsylvania Post Conviction Relief Act (PCRA), challenging the effectiveness of trial counsel's representation on four grounds: (1) failure to request a jury instruction pursuant to *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954); (2) failure to cross-examine the medical examiner; (3) failure to file a motion to suppress

4

the video surveillance footage; and (4) failure to present an alibi witness. A fifth ground was added by a supplemental *pro se* petition: (5) trial counsel's failure to object when the trial judge questioned witnesses. The PCRA court appointed counsel, but PCRA counsel filed a no-merit letter requesting leave to withdraw under *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Ct. 1998). The court permitted the withdrawal of PCRA counsel and then dismissed Mr. Mitchell's petition on all five grounds as lacking merit. Mr. Mitchell appealed to the Superior Court, reiterating his argument that trial counsel had failed to request a jury instruction under *Kloiber*, 106 A.2d 820, but also raising three new grounds: (1) failure to investigate evidence to impeach Ms. Bennett's testimony; (2) failure to object when the Commonwealth called two witnesses who refused to testify; and (3) failure to object to the prosecutor's implication of a conspiracy. *Commonwealth v. Mitchell*, No. 3304 EDA 2017, 2019 WL 578469, at *3–*4 (Pa. Super. Ct. Feb. 13, 2019). The Superior Court dismissed his *Kloiber* challenge as without merit and his three new challenges as waived because they were not raised at the PCRA initial review stage. *Id.* The Pennsylvania Supreme Court denied Mr. Mitchell's petition for allowance of appeal. *Commonwealth v. Mitchell*, 217 A.3d 220 (Table) (Pa. 2019).

Mr. Mitchell then timely filed this habeas petition pursuant to 28 U.S.C. § 2254. He raised six grounds for relief, all related to ineffective assistance of counsel for (1) failure to seek a limiting instruction upon the introduction of prior bad act evidence against Mr. Mitchell; (2) failure to object to certain improper statements in the prosecutor's closing argument; (3) pursuing an implausible defense; (4) failure to adequately discuss with Mr. Mitchell the Commonwealth's plea offers; (5) failure to properly investigate and present an alibi witness; and (6) failure to file a motion to suppress video surveillance footage of Mr. Hampton's murder.

In his Report and Recommendation, the magistrate judge to which this petition was referred found that each of these claims was procedurally defaulted and, moreover, Mr. Mitchell had no appropriate excuse or exception for the procedural default. Thus, the magistrate judge recommended that Mr. Mitchell's petition be denied. Mr. Mitchell filed objections, but only as to his challenges on the failure to seek the limiting instructions upon the introduction of prior bad act evidence, the failure to object to improper statements in the prosecutor's closing argument, and the failure to file a motion to suppress video surveillance footage. The Court reviews these three claims "de novo." 28 U.S.C. § 636(b)(1)(C). As to his other claims, the Court concurs with the magistrate judge's findings and so adopts those portions of the Report and Recommendation.

## LEGAL STANDARDS

### I. Exhaustion and Procedural Default

Federal courts can hear habeas petitions from state prisoners, but only in limited circumstances. The prisoner must first have "exhausted the remedies available in" state court, usually through a direct appeal and then a post-conviction petition. 28 U.S.C. § 2254(b)(1)(A). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "[B]oth the legal theory and the facts on which a federal claim rests must have been presented to the state courts." *Landano v. Rafferty*, 897 F.2d 661, 669 (3d Cir. 1990). Claims must be preserved from the state court of initial review to the state appellate court. *See O'Sullivan*, 526 U.S. at 845. "The habeas petitioner carries the burden of proving exhaustion of all available state remedies." *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

A failure to exhaust state remedies may be excused, and a petitioner may proceed to seek federal habeas relief, if an attempt to exhaust state remedies would be futile. *Id.* at 518. The prisoner then has two choices: he can show that he had good "cause" for his failure to follow state procedures and that he experienced "prejudice" from the underlying constitutional violation. *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991). Or he can show that it would be a "fundamental miscarriage of justice" for the federal court not to hear his petition because he is "probably" "innocent." *Id.* at 748.

In *Martinez v. Ryan*, 566 U.S. 1, 14 (2012), the Supreme Court announced a narrow exception through which a petitioner could demonstrate good cause for procedural default.[3] As the Third Circuit Court of Appeals has explained, "counsel's failure to raise an ineffective assistance [of trial counsel] claim on collateral review may excuse a procedural default if: (1) collateral attack counsel's failure itself constituted ineffective assistance of counsel under *Strickland*, and (2) the underlying ineffective assistance claim is a substantial one." *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 237–38 (3d Cir. 2017) (internal quotation marks omitted).

## II. The *Strickland* Test

Because he raises exclusively ineffective assistance of counsel claims, each of Mr. Mitchell's claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984), which announced a two-pronged test for such challenges. *See also Wiggins v. Smith*, 539 U.S. 510, 521 (2003). "First, the defendant must show that counsel's performance was deficient," which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Second, a

---

[3] "[A] federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1734 (2022). The Court agrees with Mr. Mitchell that his claims do not run afoul of that relatively recent ruling.

petitioner "must show that the deficient performance prejudiced the defense"—that is, "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The inquiry hinges on whether the petitioner has shown "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Counsel is not ineffective for failing to raise issues that are without merit. *Parrish v. Fulcomer*, 150 F.3d 326, 328 (3d Cir. 1998). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted).

## DISCUSSION

Mr. Mitchell objects that his trial counsel was substantially ineffective in failing to request or accept a limiting instruction of other bad act evidence, to object to certain statements made by the prosecutor in his closing, or to file a motion to suppress the surveillance footage showing the shooting. The magistrate judge's Report and Recommendation found that these three claims were procedurally defaulted as having not been properly raised in state court, and, in any event, failed under *Martinez*. This Court agrees and adopts the Report and Recommendation in full.

### I. Ineffectiveness for Failing to Request or Accept Limiting Instructions Regarding Other Bad Act Evidence

Mr. Mitchell claims that his trial counsel was ineffective for failing to request a limiting instruction relating to the alleged intimidation of eyewitness Mr. Young and, relatedly, failing to accept the limiting instruction suggested *sua sponte* by the trial court on that evidence. At trial, the Commonwealth presented evidence that Mr. Young and Mr. Mitchell had been brought to the courthouse together on the morning of a preliminary hearing. On the day of the preliminary

hearing, Mr. Mitchell called two friends, requesting that they get a message to Mr. Young, and the same friends visited Mr. Mitchell in detention the following day. At the next hearing four months later, Mr. Young recanted his identification of Mr. Mitchell as the shooter. Two other witnesses, Sharif Jackson, and Bashir McGough, refused to testify, and trial counsel declined to accept a limiting instruction suggested by the trial court as to the witness tampering issue regarding Mr. Young and the reasons why Messrs. Jackson and McGough did not testify.

Mr. Mitchell neither raised this claim in his direct appeal nor in his PCRA collateral appeal. He is now time-barred from returning to the state court to file a new PCRA petition to present this claim, so it is procedurally defaulted. Mr. Mitchell's only recourse, then, is excuse for procedural default under *Martinez*, and to succeed, Mr. Mitchell must show that the underlying claim of ineffective assistance at the trial court was "substantial,"—*i.e.*, "has some merit." *Martinez*, 566 U.S. at 14.

Under *Strickland*'s first prong, objective reasonableness, the Court "indulge[s] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Thomas v. Varner*, 428 F.3d 491, 499 (3d Cir. 2005). To overcome that foundational assumption, Mr. Mitchell must show (1) that "the suggested strategy (even if sound) was not in fact motivating counsel or, (2) that the actions could never be considered part of a sound strategy." *Id.* Here, Mr. Mitchell has not made either showing. Counsel's acceptance of the limiting instruction as to Messrs. Young, Jackson, and McGough could, arguably, "have highlighted the evidence"—or the unexplained failure to testify—to the jury. *Lynn v. Walsh*, 12-cv-1710, 2015 WL 672231, at *10 (M.D. Pa. Feb. 17, 2015); *cf. Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007) ("Trial counsel is not constitutionally

9

required to request a limiting instruction any time one could be given, because counsel might reasonably conclude that such an instruction might inadvertently call attention to the evidence of prior bad acts [particularly where such evidence was] briefly or fleetingly presented.").

As noted above, to succeed on an ineffectiveness claim, Mr. Mitchell must also show, under *Strickland*'s second prong, that there is a reasonable probability that, but for his trial counsel's deficient performance, the result of the trial would have been different. *Strickland*, 466 U.S. at 694; *McBride v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012). In the Report and Recommendation, the magistrate judge concluded that Mr. Mitchell had not shown a reasonable probability of acquittal even if his trial counsel had accepted the limiting instruction because the Commonwealth presented ample evidence of Mr. Mitchell's guilt. That aligns with the precedent in this circuit. *Cf. Albrecht*, 485 F.3d at 129 ("The ample if not overwhelming evidence of Albrecht's guilt, his attempt to purchase gasoline the day before the fire, the discovery of the hydraulic oil can which should not have tested positive for gasoline but did, and his numerous threats to a variety of people that he would kill his wife and/or burn down the house, supports the conclusion that he suffered no prejudice as a result of counsel's deficient performance in not seeking a limiting instruction."); *Gooding v. Wynder*, 459 F. App'x 83, 86 (3d Cir. 2012) (rejecting ineffective assistance of counsel claim where evidence of petitioner's guilt was strong). Here, the Commonwealth introduced video surveillance footage of the shooting to the jury, presented statements or testimony of three witnesses that identified Mr. Mitchell as the shooter, and explored Mr. Mitchell's motive to kill Mr. Hampton because of their competing romantic relationships with the same person. This Court agrees with the Report and Recommendation's characterization of this evidence as ample, if not overwhelming. And the fact that the jury convicted Mr. Mitchell, alone, does not suggest that the jury made improper inferences about Mr.

Mitchell's moral character based on the admitted evidence around Mr. Young's recantation. *See Lynn*, 2015 WL 672231, at *10.

Trial counsel's failure was not objectively unreasonable, nor was it reasonably probable under these circumstances that the outcome of Mr. Mitchell's trial would have been different if counsel had procured a limiting instruction as to the evidence of Mr. Mitchell's "other bad acts" relating to the alleged intimidation of Mr. Young. The Court will therefore deny Mr. Mitchell's claim for habeas relief on this ground.

## II. Ineffectiveness for Failing to Object to Improper Statements During the Prosecutor's Closing or to Move for a Mistrial

Mr. Mitchell objects to the magistrate judge's finding that the prosecutor's improper vouching as to Ms. Ransome and Ms. Bennett at closing argument was harmless under *Strickland*.

Mr. Mitchell raised this claim only on PCRA appeal. The Superior Court deemed this claim waived as a result of Mr. Mitchell's failure to comply with Pennsylvania procedural rules. He is now time-barred from returning to the state court to file a new PCRA petition to present this claim, so it is procedurally defaulted. In his § 2254 petition, Mr. Mitchell raises this claim, asserting that his procedural default should be excused pursuant to *Martinez*.

The magistrate judge accepted that the prosecutor had improperly vouched for the credibility of Ms. Ransome because there was no basis in the record for his claim that Ms. Ransome's hostility on the witness stand stemmed from her bitterness toward the victim for leaving her to raise their child alone, nor was his personal anecdote supposedly relating to Ms. Bennett's testimony supported by the record or a proper inference to be drawn from the evidence. *See, e.g., Commonwealth v. Culver*, 51 A.3d 866, 878 (Pa. Super. Ct. 2012) ("[T]he prosecutor went beyond permissible commentary and argument when he drew inferences far beyond what the evidence could reasonably support.").

11

This Court agrees that the prosecutor's statements regarding Ms. Bennett and Ms. Ransome ventured beyond the pale, but Mr. Mitchell has not persuaded the Court that he was prejudiced by his trial counsel's failure to object to those statements during closing argument. To reiterate, the Commonwealth presented sufficient evidence for the jury to find that Mr. Mitchell was guilty, including video surveillance footage of the murder, three witness statements identifying Mr. Mitchell as the shooter, and evidence of motive. And as the magistrate judge noted, the trial court instructed the jury—before and after closing arguments—that remarks made during closing argument are not to be considered as evidence. Generally, "[a] jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). So, the Court presumes that any prejudice that might have resulted from the prosecutor's improper vouching was cured by the repeated trial court instructions. Mr. Mitchell thus has not shown "that there is a reasonable probability that, but for [trial] counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Absent such a showing of prejudice under *Strickland*, Mr. Mitchell has not shown that this was a "substantial" claim for his post-conviction counsel to raise.[4] *Martinez*, 566 U.S. at 14. Therefore, habeas relief is not available to Mr. Mitchell on this claim.

### III. Ineffectiveness for Failing to File Motion to Suppress Video Surveillance Footage

Mr. Mitchell's claim that his trial counsel was ineffective for failing to file a motion to suppress video surveillance footage was raised in his initial PCRA petition. However, Mr. Mitchell

---

[4] Although the Report and Recommendation and Mr. Mitchell focus on the prejudice prong under the *Strickland* inquiry, the Court notes that trial counsel's failure to raise an objection to the improper vouching of the prosecutor at closing argument was not necessarily unreasonable or indicative of deficient performance, but *could* have been sound trial strategy. *See Zeledjieski v. Superintendent Greene SCI*, 833 F. App'x 950, 956 (3d Cir. 2020) (finding, where "arguable vouching was scattered across a much larger, legitimate argument by the prosecution [the trial counsel] could have reasonably thought that the jury would forget about the vouching or that objecting would backfire, searing the words into the jurors' minds").

failed to present the claim to the Superior Court, so it is unexhausted and would be dismissed as untimely were Mr. Mitchell to seek to present the claim to a state court now. *See* 42 Pa. Cons. Stat. §§ 9544(a)(2), 9545(b)(1). This claim is thus procedurally defaulted, and the Court can only consider it if Mr. Mitchell shows cause and prejudice or that failure to consider the claim would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 748, 750.

Mr. Mitchell argues that *Martinez* excuses his procedural default. However, the exception announced in *Martinez* applies only to "procedural default[s] in an initial-review collateral proceeding." *Martinez*, 566 U.S. at 14; *see also Norris v. Brooks*, 794 F.3d 401, 405 (3d Cir. 2015) ("*Martinez* made very clear that its exception . . . applies only to attorney error causing procedural default during initial-review collateral proceedings, not collateral appeals.").

Mr. Mitchell avers that his PCRA counsel filed a no-merit *Finley* letter, and in doing so, failed to recognize a meritorious claim. That failure, he says, allows him to rely on *Martinez* for this claim. This is not so. The *Martinez* exception is only available where, if not for the exception, "no court—state or federal—would ever review the defendant's ineffective assistance claims." *Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014). But here, Mr. Mitchell's PCRA counsel's *Finley* letter discussed the claim relating to trial counsel's failure to suppress video surveillance footage and laid out an explanation as to why the claim lacked merit.[5] The PCRA court then dismissed all

---

[5] The *Finley* letter states, in relevant part:

> The Defendant claims that trial counsel was ineffective for failing to move to suppress video surveillance footage and multiple statements of identification. These claims, addressed below, are without arguable merit.
>
> The video surveillance footage was given to police from the owner of a store located on the corner of 25th and Masters Streets. Suppression is legally impossible in that the Defendant can neither show standing nor an expectation of privacy of video of a public street warranting suppression. Likewise, a motion in limine to exclude the video would be unsuccessful because the video posted online contained the same content as the video shown to the witnesses. The police simply shortened the video to show only the murder. Cutting out the extra video footage doesn't turn the video into demonstrative evidence. The

five grounds of the PCRA petition, having concluded each lacked merit. *Martinez* cannot salvage the at-issue claim when the PCRA Court considered it on its merits and Mr. Mitchell—not his appointed counsel—failed to raise the claim on PCRA appeal. *See, e.g., Wilkerson v. Pa. Bd. of Prob. & Parole*, No. 16-cv-4296, 2018 WL 2472597, at *10–*11 (E.D. Pa. Mar. 29, 2018) (finding that *Martinez* did not apply where *Finley* letter discussed the merits of each of the claims raised by petitioner in *pro se* PCRA petition), *report and recommendation adopted*, 2018 WL 2462003 (E.D. Pa. May 31, 2018); *Mojica v. Garman*, No. 18-cv-2021, 2019 WL 1756547, at *7 n.14 (E.D. Pa. Mar. 27, 2019) ("Because the PCRA Court considered Petitioner's PCRA claims on the merits, *Martinez* would not apply to provide cause to excuse his procedural default."), *report and recommendation adopted*, 2019 WL 1755720 (E.D. Pa. Apr. 19, 2019).[6]

Therefore, this claim does not fall within the narrow scope of the *Martinez* exception, and the Court need not examine the claim on the merits.

---

> Defendant's allegation that the video was altered is based upon witnesses Bennett and Ransom's statements that the video looked clearer on the police computer than it did on her computer. The content of the videos were the same but shown on different computer equipment. There simply was no testimony from either Bennett or Ransom that the video posted online was different in content than the video shown to the witnesses at the police station or in the courtroom at trial.

*See Commonwealth v. Mitchell*, No. CP-51-CR-0005026-2013, *Finley* Letter, at 6–7 (dated June 1, 2017).
[6] Mr. Mitchell's reliance on a nonprecedential Third Circuit Court of Appeals opinion, *Mack v. Superintendent Mahanoy SCI*, 714 F. App'x 151 (3d Cir. 2017), is misplaced. In *Mack*, there was no indication that the plaintiff's PCRA counsel filed a *Finley* letter that discussed an ineffective assistance of counsel claim or that the PCRA court decided that issue on the merits. *Id.* at 152, 154 ("*Martinez* may still exclude the default *if* Mack's PCRA counsel was ineffective for filing a no-merit letter and not raising Mack's ineffective assistance claim regarding plea counsel.") (emphasis added). Indeed, in *Mack*, even the petitioner's "*pro se* response . . . did not raise a claim that plea counsel had been ineffective." *Id.* at 152. Here, Mr. Mitchell's PCRA counsel acted reasonably in summarizing Mr. Mitchell's claim and presenting it to the PCRA court for decision on the merits. *See Smith v. Capozza*, No. 15-cv-3222, 2019 WL 13249564, at *4 (E.D. Pa. July 19, 2019) ("Satisfying the first element of *Martinez* requires Petitioner to demonstrate that PCRA counsel's representation fell below an objective standard of reasonableness."). Under these circumstances, the Court cannot find that PCRA counsel was the "cause" of the procedural default of this claim that occurred *on PCRA appeal*. *Coleman*, 501 U.S. at 749–50; *see also Mojica*, 2019 WL 1756547, at *7 n.14.

## Conclusion

For these reasons, the Court overrules Mr. Mitchell's objections and adopts the Report and Recommendation in full. Because reasonable jurists would not "find it debatable" that Mr. Mitchell's procedural defaults are not excused, the Court will not issue a certificate of appealability. *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). An appropriate order follows.

BY THE COURT:

**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**